Mr. Walker, whenever you're ready. Thank you. May it please this honorable court. My name is Jonathan H. Walker from the law firm of Mason Mason, Walker & Hedrick in Newport News, Virginia. It's my pleasure to represent the appellant, Norfolk Southern Railway Company. I'd also like to introduce co-counsel sitting at the table here. This is Daniel Warman from the law firm of Ventker & Warman, who is with me on brief. We like to think, your honor, that we're here on a case that is not a case of first impression. We rely very strongly on the precedent of this court in the case of CSX v. Shives and also the precedent of the United States Supreme Court in the case of C&O Railway Company v. Schwab. The facts in the case also are not unique to either of those cases. This court has seen almost identical facts in another case, Etheridge v. Norfolk Railway and in that case, like in this case, we have a brake man who is operating a brake car in a maritime situs, maritime situs being the marine coal yard that's loading coal onto a ship and he's injured on the maritime situs and he files a claim under the Longshore Act, which he should because the Longshore Act has exclusive jurisdiction over such claims. Unsurprising to us, of course, he also files a FELA action in state court. We remove the case to federal court, as is a procedure that's been established in the issue and at that time, the plaintiff argues that we admit that there's coverage. We've actually filed a claim under Longshore Harbor Workers' Compensation Act. We're actually receiving benefits, but that doesn't end the inquiry. This court has, the argument is that the state court should also decide whether the coverage issue ends the case. Up till that point, there was no question in established case law from the Schwab case and his progeny on into this court's decision in Shives that coverage, in fact, ends the case, there is Longshore coverage, there is exclusivity, and therefore, there is no FELA action. That's the specific holding of the Schwab decision in the United States Supreme Court and this court in Shives said, LHWCA coverage is exclusive and preempts Shives from pursuing a FELA claim, period, it's black letter law. So the judge faced, and district court faced with that argument, characterizing it as a novel argument, which we respectfully disagree with, should have, at that point in time, simply decided that question as well, if she thought it was, in fact, a separate question. It's our position that... Another point, Shives, too, that the federal courts should decide that question and not let the state courts in their various handlings of FELA cases decide that question. That the uniformity of the federal law should decide that question. You're correct, Your Honor. Your Honor, you wrote the decision. It's a roadmap to exactly how we try to engage ourselves in this case. And following it, I thought that, or my client believes, that there was no question that once coverage was established, it was the federal district's court's responsibility to dismiss the case. And the Shives case makes it very clear that it's the federal court's responsibility to District court thought that this was a jurisdictional question, the 1445A, and used 1445D, 1447D. Isn't that what happened? No, that's the... No, excuse me. I withdraw that question. That's the question of whether we can review the district court. And that's... You're not debating that issue right now. Okay. I'm not... I know that there's going to be strong debate from my opponent that 1447D prohibited us from bringing the case into federal district court in the first place. I do understand that. But the answer to that question, if I can answer it before he gets to it... My question was, there was an issue about our review of a remand order and the limitation of our review of a manned order when it's decided jurisdictionally. And all the circuit courts that have considered the question indicate that 1445 is a procedural matter, not a jurisdictional matter. That's absolutely correct, Your Honor. And I think that the point in this case is that the coverage question, if it is admitted, and I will say that it's gone... There's been lip service to whether the claimant or appellee in this case was, in fact, engaged in maritime employment. There's been an argument that he wasn't engaged in maritime employment exactly at the time of his injury versus what his employment was generally. And it's very clear in federal court law that it doesn't matter whether he was engaged in maritime employment and a maritime function at the time of injury, but rather that his job... It's a situs issue. It's a maritime situs, but in this case, he also filed a maritime claim. He filed a claim for longshore benefits and received them. And the law just doesn't permit a person to sue an employer for both longshore benefits and FELA benefits. It either has to be one or the other. That's correct, Your Honor. And that is... The novel argument is, oh, yes, the law does permit that. That's the novel argument that the district court felt the state court should decide. But even if you get to that novel argument, it's exclusively a federal question. We're interpreting the Longshore Harbor Workers' Compensation Act, a federal law, and whether it's in conflict or it precludes another federal law, the FELA. So what responsibility the state court would have to actually entertain that? From their point of view, the state court has jurisdiction to hear FELA cases, and does. And 1445A say those are not removable to federal court. So that if the Congress provided that you can decide an FELA case, both in a state court or a federal court. But the twist in this case is that he was in a maritime employment and got benefits. And there are procedural twists in this case, but the bottom line, he can't have both benefits. I'd have to agree with you, Your Honor, that that is the bottom line, that he can't have both benefits. How procedurally we get there is a little complicated, if we get there. If you get there. And I would, again, reiterate that in Shives, there's a perfect roadmap as to how you get there. In Shives, the district court decided to tackle the question of the validity of the claim. And so when it comes up here, we're faced with the question, what do we do with this decision, even if we think it needs to be sent back? What do we do with this decision the district court has made, and what effect is that going to have on subsequent proceedings? We don't have that in this case. I'll be interested to know what the response is to the question of, do you concede long-short coverage, in this case, from my opponent? Because on pages 11 and 12 of the response brief, he's arguing, oh, no, he's not engaged in maritime employment. I don't think you're quite grappling with Judge Traxler's question, or what would be my question. Sure. And that is, what do we make of the distinction between this case and Shives, and that in this case, the district court made no antecedent decision? The district court, in order to reach the, in the district court's analysis, as on Joint appendix page 91, the district court basically said, there's a question of coverage here, coverage is conceded, but there's an additional argument as to exclusivity. Our position is the district court did decide the issue of coverage. She decided that the issue of coverage made no difference. She actually decided, went one step further than coverage, saying, okay, there is coverage, it's admitted, but there's also an argument of exclusivity. It's our position that coverage equates to exclusivity. If you decide coverage, there's no question about exclusivity. Schwab has been around forever. But the judge somehow bifurcated that issue into two issues. Well, the question I think more refined, as I understand what Judge Draxler's asking you, is the procedural posture in Shives was that the court was facing prospectively, whether this was a Longshore Act case or an FELA case. Whereas in this case, we're beyond that. The FELA, it was already a maritime case, and there was another issue. And the question is, is that procedural difference take the procedural course that was set out in Shives? Does it remove that from this case? And my response, Your Honor, is it certainly does not. And I'll look at it from the other way, which is under 1445C, where this court said in Shives, unless the decision is based specifically on, and those are the words, precisely under Section 1447C, excuse me, Your Honor, then we're all right to review this. And you relied upon the case of Jamison v. Wiley in which Jamison v. Wiley said, we've looked at the decision and there's no mention of 1447C, which is the only provision that would preclude us from judicial review. There's no mention of it, and we've never had a case where we've refused to review unless 1447C was mentioned. The case went on to say it doesn't matter whether it's mentioned or not, as long as it's specifically or precisely under 1447C that the remand takes place. Judge Niemeyer's articulation really didn't get to my question, which is a little bit different, and goes back to the Supreme Court's decision in the city of Waco, and that is, do we have an antecedent decision that conclusively affected the party's rights as we appear to in Shives? You have an antecedent decision that conclusively affected our right to have the case dismissed? Yes. Completely. And I think that there's no question about that. Well, I'm asking the question because I don't see a decision here that could have such a preclusive effect. If I may, Your Honor, I see my time's up. May I finish the question? Yes. As in Shives, when the Federal District Court remanded the case, that was essentially the end of the case in the Federal District Court. Correct, but all I'm saying is a remand in that situation is generally not reviewable, but there are exceptions, and one of which crops up in Waco and existed in Shives, and that is the presence of an antecedent decision that saves the appealability. And that was what I was asking. And I think that there's an antecedent decision as long as the two bases articulated in 1447C are not the bases that were remanding the case. I'm sorry, Your Honor, if I'm not… Thank you. That's fine. All right, let's hear the argument on behalf of Mr. Bonham. Good morning, Honorable Judges. My name is William Bright from Virginia Beach, Virginia. I represent Mr. Bonham who filed this field action in State Court. Together with me is Mr. Stephen Liggum from Golbat, Liggum & Cohen, co-counsel in this case. The answer to the question is Judge Smith did not make any type of finding with respect to a condition antecedent that would bring the federal question of longshore coverage into this case. And for that reason, the remand order is not reviewable. If you analyze… And the antecedent question would be the exclusivity. No. No? The antecedent question is the issue of coverage. Is there coverage under the Act? Which is a different question than the exclusivity under the Act. See, this case has been remanded to the Norfolk Circuit Court. We are in the Norfolk Circuit Court. We have a hearing on September 11th regarding the plea in bar that the exclusive remedy is the Longshore Act. Have you conceded the question of longshoreman Act coverage? Yes and no. For purposes of… No, you really only get to pick one. Okay. For purposes of this argument, my client filed a longshore claim. It's been voluntarily paid. There's no award. He is covered under the Act. He is receiving benefits under the Act. I am not conceding that he was engaged in maritime employment at the time of this action. And so, therefore, if this Court chooses to send the case back to the District Court, I think there has to be a hearing on whether he was engaged in maritime employment at the time of this action. However, for purposes of the argument, I'm going to concede that because the Supreme Court has said it doesn't matter what he was doing at the time of the accident. It's an occupational test. So that if any part of his employment involves maritime employment, regardless of what he's doing the other 90% of the time, he's covered under the Act. So Mr. Bynum didn't have anything to do with maritime employment in this accident. There's nothing to do with it. But under the present case law as it exists, because it can be proven that as a brake man under Etheridge and Patterson, some of his work, 5% or 10%, whatever it is, was maritime employment, he's going to be covered under the Act at all times. And this is a very important distinction between maritime cases and railroad cases. Now, I've been a maritime lawyer my whole life. I don't know anything about railroad law so much. And when we have a 905B case, we go, oh, we can bring a case because the legislative history is important here. The railroad was never at the table when the amendments came down or when the negotiations went off. It was a tradeoff between unseaworthiness, and I don't have to explain to the court the whole history, a tradeoff of unseaworthiness versus indemnification from the stevedore. My father argued the Edmonds case in the United States Supreme Court, and there used to be contribution. So it was a tradeoff. I think I may have led you down a path that may not be helpful. You started out by saying that there's no finding with respect to an antecedent decision. I think I understand the gist of your answer to my question, and I didn't mean to distract you from your argument. Well, let me ask you this question. In Shives and in other cases, it's been indicated that this issue of applying the Longshore Act and its exceptions and anything else about it is a question that the federal courts ought to handle exclusively and not have state courts decide. We're going to have, in this case, if you're correct, we're going to have the state court deciding whether the Longshore Act provides an exception that lets the FDLA case go forward, and that should have been decided by a federal court. I disagree. That's what Shives said. And I disagree. And the reason that I disagree with what Shives says is because Shives dealt with the issue of whether there was coverage or not. And so in Shives, the court said – It's an enforcement of coverage. I mean, one is the inception of it, and the other is the continuing enforcement of it, but it doesn't eliminate the issue of who's going to decide these questions. But the decision of whether there is coverage is with the National Labor Relations Board. The district court doesn't have jurisdiction to make that decision. It goes from the NLRB to the Fourth Circuit. So the district court has no jurisdiction to decide the coverage question. That's never properly before that court. And so the problem here is whether there is coverage or not. All of the cases have dealt with the issue is are they engaged in maritime activity at the time of the accident and not the relationship between – But that's not an issue in this case. He was a maritime employee. He filed for benefits. The Department of Labor gave him benefits. Yes, sir. Now he's trying to apply that act and say there's an exception under that act by which I can bring an FELA case. No, no. I am saying there's an exception under the FELA case. And that's where the roads diverge here. You see, there's no question of coverage in this case. And so the state court is not going to be asked to decide a federal question of whether there is or is not coverage. All they're going to be asked to do, which has happened many, many times, including the Supreme Court case that's been relied on by the appellates, Patterson, where the issue in the state court has nothing to do with coverage under the Longshoremen Act. The only issue there is, is it his exclusive remedy? And state courts decide that all the time. It's not a coverage question. He's covered. But as this court said, it's either one or the other is really what this debate should be about. And so there are two issues here. The first is, does this court have jurisdiction? Are we properly before it? My position is no. It removes a railroad case. You can't remove a railroad case. It's then remanded back. There is no conditional antecedent in the decision of the judge. She was within her powers to remand that case back. And so if you look at Shives, it relies upon the United States Supreme Court case of Thermotron products. And that's a very important case because that's where Shives kind of diverged. And the reason that's important because Shives relied on it, the Thermador case is at 423 U.S. 336. What happened in that case is that a case was properly removed. Railroad case is not properly removed. The case was properly removed, and then the district judge remanded it because they had a crowded docket. And what the court said, the United States Supreme Court said, that in a properly removed case, if you remand it back to the state court for issues that were not authorized by statute, then it was just outside of her powers to remand that case. And because she did an act that was outside of her powers, the only remedy was a mandamus to make her follow the statute because she was exercising rights that were not authorized by statute. And so the court said, all right, we can mandamus her because she's doing something that's not authorized by statute. She's outside of her warrant and her judicial powers, so we're going to mandamus her. And so based upon that, this court in Shive said, well, we're going to mandamus them. But the case that you relied upon specifically says the only time you can mandamus somebody is if it was to compel something that was outside of her powers. If she's doing something that she's lawfully entitled to do, then the remand is not reviewable. And that's one of the main problems we have with this case presently, is that I don't believe this remand order is reviewable because, one, the judge did not make an antecedent decision. The judge didn't make a jurisdictional decision. Exactly. Well, the Supreme Court has said 1447D has to be read restrictively in accordance with 1447C, which relates to jurisdiction. If the remand is based on jurisdiction, we can't review it. If it's based on something else, we can't review it. And the courts uniformly have held that 1445 is a procedural mechanism that is not jurisdictional. Except that there's one other test that goes along with that, which was mentioned in the Thermidor case, which is that you can't use the reviewability of an order unless it's outside the authority of the judge who did it. This judge was completely and properly within her powers to decide that this case was improperly removed to the federal court. And we have a right under 1447D and Thermitron and 1447C to review that. I believe that Thermidon says only if it's properly removed and only if the judge, in the exercise of her remand, does something that is not specified by statute, which is I'm going to send it back because we have a crowded docket, and that's outside the scope of her power, then I would agree with the court under those circumstances. But let me get to the meat of what I've been talking about here. FELA has been around for a long time. It's a statutory cause of action. And the history behind the Longshore Act dealt with giving up your maritime rights and giving up your common law causes of action so that when you sue under the Longshore Act, it's a specific statutory authority in which you've given up both your common law right and your admiralty right. And so when I got this case, I'm going, why is everybody saying it's your exclusive remedy? It's got to be one or the other. And I haven't found a case that says that. The reason that I say that is Schwab. Because Congress said it. Well, I'm going to get to that. Right in the language of the statute, it says it's the only mechanism you can recover, and the only exception is in B, which says you can sue the vessel, and that's the historical distinction between the stevedore and the vessel. Correct. You're trying to argue that the railroad car is a vessel. No. Well, I don't know how you get under B. Okay, I will explain it. But I don't need to do that right this minute. I'm just telling you, answering your question. You're making statements about the law that I don't think come. I mean, we're talking about a very clear statutory scheme. Right. And you're just sort of saying that ain't so. Because I've looked at this from a different perspective. Schwab, which was an appeal from the Virginia Supreme Court, it was stipulated among the parties, if you look at the Supreme Court case, they stipulated that that was the exclusive remedy. If he's covered under the act, it's exclusive remedy. Look at any of these cases. There's no discussion in any case about the statutory construction relating the Longshore Act and the FILA Act. None. This is what 905 says. The liability of an employer prescribed in Section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee. And the important language is in the next sentence, Your Honor. And what it says is it's exclusive from an employer for his actions at law or in admiralty. At law is common law. There's nothing in the Longshore Act that repeals FILA. There's nothing that addresses FILA. FILA was not at the table. And the reason I discuss Conte is because this court has already said, if you look at the legislative history of the Longshore Act, it's clear that the railroads were never mentioned, the railroads weren't involved. There's nothing about a railroad. And so the exclusive liability under the Longshore Act is for their actions at law or admiralty. For example, if you get longshore benefits, and this has been decided by the courts, is that his exclusive remedy against his employer for his railroad retirement benefits as a result of him being disabled in this accident? Is it going to be exclusive of his remedies with respect to the Safety Appliance Act? Is it exclusive as his remedies to labor union issues and negotiations? It's clear that the exclusivity of the Longshore Act is limited to actions at law. And if you look at the legislature, we're talking about the common law claims to sue your employer or actions in admiralty. It is not the exclusive remedy if he's bringing a railroad retirement case or a ERISA action or Safety Appliance action. The exclusivity is limited to the tradeoff that occurred between the parties that were there, the ship owners and the stevedore and the longshoremen. And so what we're doing with the railroad is trying to put a square peg in a round hole. For example, let's say you've got a guy who 10% of the time is engaged in maritime employment, and he's an engineer, and they send him out to Grundy to drive the locomotion back to Lambert's Point. Well, 10% of his job is maritime. But clearly, as the engineer driving that train, but under the present case law, he would be covered under the Longshore Act as soon as he gets on that property because 10% of the time he's doing maritime activity, and 90% of the time he's doing railroad activity. So that can't possibly be the law as it applies to a railroad worker. So how does the Longshore Act get this exclusivity versus the FEAL Act? It's either one or the other, and that's wrong. And the reason it's wrong is because nobody has discussed or looked at the statutory construction of FEALA in Section 33 U.S.C. And there's no case that concludes that you can have both a FEALA remedy and a longshore remedy. Yes, there is, out of this court, the Freeman case. It says it right on point. And there's a reason for it. And there's a reason for it, and that is if you look at the FEALA statute, and I'm going to rely exclusively on 45 U.S.C. Section 58, what does that say in the FEALA statute? Nothing in this act shall be held to limit the duty or liability of a common carrier or to impair the rights of employees under any other act or acts of Congress. What does that mean? That means that nothing, no other act of Congress can interfere with the employee's right to bring a FEALA action. It's statutory. So you're going to have to deal with statutory construction. The Longshore Act never addressed railroad workers. There's not. You won't find one word in the legislative history, in the amendments. They just weren't at the table because railroad workers don't go on vessels. They don't have the problem of walking in and out of coverage when they walk on the ship and then they walk on the other. There's none of those issues. So Section 58 says nothing will impair the rights of employees under any other act of Congress. So FEALA says you can get your longshore benefits. It's your exclusive remedy for common law actions and amnesty actions, but nothing can interfere with the employee's right to bring a FEALA action. It's in the code. The reason that I think that I'm right is because the very next section, which is 45 U.S.C. Section 55, has in it a set-off provision, which is exactly what happens in the longshore world when you have a  That's in the Freeman case, that if you bring a longshore action first and then you bring a FEALA action, the railroad statute provides for a set-off. Such common carrier may set off therein any sum, and this is in the FEALA statute, any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or person entitled to on account for their injury. So the FEALA statute hasn't been repealed by the Longshore Act. It's in conflict. Under Virginia law, we've got a lot of case law that says you cannot interpret a statute to completely and totally negate FEALA. It has to be expressed. It can't be implied. There's nothing in the Longshore Act that repeals or repudiates the FEALA action. Okay? Look at the FEALA action. No act of Congress under Section 50, excuse me, under Section 58, no act of Congress can interfere with a railroad worker's right to blink a railroad action. Your argument is based on, I think, a very imaginative construct. You're saying that an employee can sue an employer for workers' comp, which is the Longshore Act, and at the same time for negligence on FEALA. That's what your argument is. Only because he has to. No, I'm asking you. Yes. Okay. It's only because he has a statutory right to do so. He has the statutory claim. Nobody can sue their employer. All the states have. Well, that begs the question. The question is whether the statute provides for both methods of recovery. And I say the Longshore statute doesn't, but the FEALA statute where he's brought his action clearly does, with a right of setoff for his Longshore comp payments. And I don't see how the Longshore Act can completely negate and totally overrule another statutory act of Congress that says that he can't be interfered with in bringing his FEALA action. For those reasons, I think the court was right in demanding it because they didn't have to decide the issue that's properly before the state court on whether it's a bar or not. And that wouldn't be a federal question. That would be just a plea in bar as to a state court remedy under FEALA. So for those reasons, I think that this case should be dismissed, on my motion to dismiss, because this court cannot review a remand decision that was properly made on a case that was improperly removed from the state court. Thank you. Thank you, Mr. Frye. Mr. Walker. May it please the court again, I wanted to make clear that the Freeman case that counsel was relying upon was decided in 1979. That's 10 years before Schwab, by the United States Supreme Court, answered the question. Schwab was dealing with this whole problem that the court recognized in Shives, which is if you leave it to state courts to decide the question of coverage, of whether someone is engaged in maritime employment, you're going to get inconsistent results all over the place. And when this court decided the Freeman case, that was, again, 10 years before. And what happened was in Freeman he had already filed a FEALA claim and then went and filed a Longshore claim. And the court just decided, well, we're going to allow them to have a credit in the Longshore Act against the FEALA case. That issue is put to rest, it's essentially overruled by Schwab, and this court has consistently followed Schwab since. And you have a case, Etheridge, which is exactly on point with this case. You have a brake man in the same coal yard doing essentially the same duties that was injured, and there was no question of coverage. So there is no need to send this question of coverage back to the district court. I think counsel conceded in his opening argument that for purposes of federal law, coverage exists. For purposes of federal law, there's no question about that. What he's trying to say is let us go back and try it in the state because I might get a different result, which is exactly what Shives is saying we're trying to prohibit. He talked about the case of Patterson versus CSX. That's a Supreme Court case. We don't rely upon that. We've illustrated in the writ of Mandamus that Patterson shows you how you can have inconsistent results because Patterson, while they didn't say, while they recognized that maritime employment would be defined as being engaged in maritime activity, they went that extra step to say at the time of injury. And that's clearly not the law. Schwab makes very clear, the United States Supreme Court, that at the time of injury is not the question. The question is status over the course of the person's job, what the person does for a living day to day in that coal yard, that marine coal yard. So I think he's illustrating my point that the reason we ask the United States District Court judge to decide this limited federal question of coverage, and if it exists, to dismiss the case, is because it's the interest of uniformity and consistent results. And that's what SHIVES stands for. It's also very clear that even if Section 1447D came into play and prohibited the court's review, that the writ of Mandamus that we have filed is an alternative basis to exercise jurisdiction. Why is that? When, as I recall, the statute says prohibits review by appeal or otherwise. Am I remembering that correctly? I'm sorry, Your Honor. I thought that 1447D prohibits review by appeal, and I think it uses the phrase or otherwise. Am I remembering that incorrectly? I don't believe so, Your Honor. So it's not limited to an appeal. Wouldn't Mandamus fall into or otherwise? Mandamus could fall into or otherwise, which is why we, frankly, filed for both and why we followed the roadmap in SHIVES. Or otherwise subsumes the writ of Mandamus. Well, Germtron laid it out. Germtron construed all of this and basically indicated that if it's barred and there's an antecedent decision, you can do it by Mandamus and suggested that's the route. But it limited 1447D's limitation on review to remands based on subject matter jurisdiction. Or removal that was improvidently granted. Or improvidently granted, correct. And, again, in 1440C you have those two specific exceptions that aren't existing in this case. And as far as Germtron goes, my opponent mentioned that there was a responsibility, I'm sorry, that unless the judge had avoided a responsibility that writ of Mandamus wouldn't be proper. But in here she did actually avoid the responsibility of deciding that coverage issue and dismissing the case. It was a complete avoidance. If you look at the analysis, what analysis there is at the end of the decision. So there's no question that she didn't. The coverage itself was an antecedent to the remand because she said coverage is something I'm going to avoid because plaintiff's counsel is making this novel alternative argument that even if you have coverage, you don't have exclusivity. Again, we rely upon Schwab, his progeny, and the road map is very clear in Shives. And the case should just simply be dismissed or remanded to be dismissed. Thank you. Thank you, Mark. All right. We'll come down and greet counsel and then go into our next case.
judges: William B. Traxler, Jr., Paul V. Niemeyer, Allyson K. Duncan